

LK

4/5/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

RECEIVED

APR 0 5 2021

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Magistrate Judge Beth W. Jantz
United States District Court

UNITED STATES OF AMERICA          )
                                  )          No. **1:21-CR-00208**
            v.                    )
                                  )          Violation: Title 18, United States
HADI ISBAIH                       )          Code, Section 1343
                                  )
                                             **JUDGE COLEMAN**
                                             **MAGISTRATE JUDGE KIM**

<u>**COUNT ONE**</u>

The SPECIAL NOVEMBER 2020 GRAND JURY charges:

1.      At times material to this Indictment:

        a.      Defendant HADI ISBAIH owned and operated Flash Tax Service,
Inc., a business in Bridgeview, Illinois.  ISBAIH resided in Palos Heights, Illinois.

        b.      Flash Tax advertised on Facebook, billboards, and its own
website.  Advertised services included tax and investment consulting, and
immigration and administrative services.  Flash Tax also advertised its services
related to COVID-19 government relief programs.

*COVID-19 Federal Government Relief Programs*

        c.      The U.S. Small Business Administration ("SBA") was a United
States government agency that provided support to small businesses.

        d.      The Coronavirus Aid, Relief, and Economic Security ("CARES")
Act was a federal law enacted in or around March 2020 and designed to provide
emergency financial assistance to those who suffered economic effects caused by the
COVID-19 pandemic.  One source of relief provided by the CARES Act was the
authorization of up to $349 billion in forgivable loans to small businesses for job

retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $320 billion in additional funding for PPP loans.

      e.     Under the PPP, the SBA forgave interest and principal on PPP loans if the business spent the loan proceeds on these items within a designated time period and used at least a certain percentage of the PPP loan for payroll expenses.

      f.     PPP loans were originated and funded by SBA-approved lenders and guaranteed by the SBA. To obtain a PPP loan from an SBA-approved lender, small businesses, including sole proprietors, independent contractors, and self-employed individuals, submitted electronic applications to SBA-approved lenders, including Lender A. SBA-approved lenders required applicants to provide truthful information, including information about the nature of the applicant's business, and its payroll expenses and employees, which was material to the lenders' approval, terms, and funding of loans.

      g.     Self-employed individuals were eligible to apply for a PPP loan if the individual had a business in operation on February 15, 2020, self-employment income, and a principal place of residence in the United States, and filed – or would have filed – an Internal Revenue Service Form 1040, Schedule C, for 2019. Schedule C, titled "Profit or Loss from Business," was a schedule that listed income and expenses related to certain types of businesses, including sole proprietorships, that were owned by the taxpayer.

h. The amount of the PPP loan for which a business was eligible depended on the business's monthly payroll expenses as documented on the applicant's 2019 IRS Form 1040 Schedule C or other 2019 tax forms. To substantiate the monthly payroll expenses listed on the PPP loan application, applicants were required to submit a copy of the applicant's 2019 IRS Form 1040 Schedule C or other tax forms, such as IRS Form 941, a form employers use to submit quarterly tax returns.

i. Another source of relief provided by the CARES Act was the expansion of the Economic Injury Disaster Loan ("EIDL") program, which provided loan assistance (including advances of up to $10,000) for small businesses, including those with with 500 or fewer employees, sole proprietorships, and independent contractors, for loans up to $150,000. The EIDL program was designed to provide economic relief to small businesses that were experiencing a temporary loss of revenue.

j. To gain access to funds through the EIDL program, small businesses applied through the SBA via an online application. As part of the EIDL application process, the SBA required applicants to submit truthful information concerning the business, including information regarding gross revenues for the business prior to January 31, 2020, cost of goods sold, and number of employees. Applicants were required to electronically certify that the information provided was accurate and were warned that any false statement or misrepresentation to the SBA may result in sanctions, including criminal penalties.

k.     EIDL proceeds were permitted to be used to pay an array of working capital and normal operating expenses, such as continuation of health care benefits, rent, utilities, and fixed debt payments.

l.     EIDL Advance was a grant program offered together with the EIDL program.  The amount of the advance issued to the small business applicant was determined by the number of employees indicated on the EIDL application, $1,000 per employee, up to $10,000.

m.     EIDL funds were issued to the small business applicants directly from the United States Treasury.

2.     Beginning in or around April 2020 and continuing until at least in or around October 2020, at Bridgeview, in the Northern District of Illinois, Eastern Division, and elsewhere,

HADI ISBAIH,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property from federal government relief programs by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3.     It was part of the scheme that ISBAIH, in exchange for fees, knowingly submitted, and caused to be submitted, PPP loan and EIDL applications and supporting documents on behalf of hundreds of Flash Tax customers that contained materially false statements and misrepresentations regarding the nature of the applicant's business, and the business's income, gross revenue, expenses, and number

4

of employees, and caused millions of dollars in fraudulently obtained PPP and EIDL funds to be disbursed to those customers.

4.    It was further part of the scheme that ISBAIH charged Flash Tax customers an upfront fee of approximately several hundred dollars before ISBAIH submitted false and fraudulent PPP loan or EIDL applications on the customers' behalf, and, if the customers received the PPP or EIDL funds based on those applications, ISBAIH charged the customers an additional fee of approximately $1,000.

5.    It was further part of the scheme that ISBAIH's knowing submission of false and fraudulent PPP and EIDL applications caused the SBA and SBA-approved lenders, including Lender A, to disburse PPP loan proceeds, EIDL proceeds, and EIDL Advance funds to Flash Tax customers.

6.    It was further part of the scheme that ISBAIH knowingly created, and caused to be created, false tax documents for customers, including Schedule Cs and Form 941s, that listed false business income and payroll expenses so the customer could qualify for a larger PPP loan or EIDL.

7.    It was further part of the scheme that ISBAIH directed Employee A, who was employed by Flash Tax, to assist him in creating false Schedule Cs for customers so the customer could qualify for a larger PPP loan or EIDL.

8.    It was further part of the scheme that ISBAIH knowingly submitted, and caused to be submitted to lenders, including Lender A, PPP loan applications containing false statements regarding the nature of the customer's business, income,

payroll expenses, and number of employees, and false tax documents ISBAIH created and directed Employee A to create.

9.      It was further part of the scheme that ISBAIH knowingly submitted, and caused to be submitted, to the SBA EIDL applications containing false statements regarding the nature of the customer's business and the business's gross revenues.

10.      It was further part of the scheme that ISBAIH misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the purposes of the scheme and acts done in furtherance of the scheme.

11.      On or about May 27, 2020, at Bridgeview, in the Northern District of Illinois, Eastern Division, and elsewhere,

HADI ISBAIH,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings and signals, namely, an internet transmission of a PPP loan application for Customer A, processed through Lender A's computer servers in Virginia, which application contained a false IRS Form 1040 Schedule C and misrepresented Customer A's payroll expenses;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL NOVEMBER 2020 GRAND JURY further charges:

1.      Paragraphs 1 through 10 of Count One are incorporated here.

2.      On or about June 1, 2020, at Bridgeview, in the Northern District of Illinois, Eastern Division, and elsewhere,

### HADI ISBAIH,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings and signals, namely, an internet transmission of a PPP loan application for Customer B, processed through Lender A's computer servers in Virginia, which application contained a false IRS Form 941 and misrepresented Customer B's payroll expenses;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL NOVEMBER 2020 GRAND JURY further charges:

1.    Paragraphs 1 through 10 of Count One are incorporated here.

2.    On or about June 26, 2020, at Bridgeview, in the Northern District of Illinois, Eastern Division, and elsewhere,

### HADI ISBAIH,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings and signals, namely, an internet transmission of an EIDL application for Customer C, processed through the SBA's Disaster Assistance Processing and Disbursement Center in Texas, which application contained false information regarding the nature of Customer C's business and its gross revenues;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL NOVEMBER 2020 GRAND JURY further charges:

1.      Paragraphs 1 through 10 of Count One are incorporated here.

2.      On or about August 5, 2020, at Bridgeview, in the Northern District of Illinois, Eastern Division, and elsewhere,

### HADI ISBAIH,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings and signals, namely, an internet transmission of a PPP loan application for Customer D, processed through Lender A's computer servers in Virginia, which application contained a false IRS Form 1040 Schedule C and misrepresented Customer D's monthly payroll expenses;

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL NOVEMBER 2020 GRAND JURY further alleges:

1.     Upon conviction of offenses in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offenses, as provided in Title 18, United States Code, Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.     The property to be forfeited includes, but is not limited to, a personal money judgment in an amount equal to the proceeds derived from the offenses in violation of Title 18, United States Code, Section 1343.

3.     If any of the property described above, as a result of any act or omission by defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____
UNITED STATES ATTORNEY