UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21-cr-208 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| HADI ISBAIH, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Hadi Isbaih has been convicted by a jury of his peers of devising a scheme to defraud the Federal Government by submitting applications for Paycheck Protection Program ("PPP") loans containing false information. After his trial and conviction, Mr. Isbaih submitted a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 [89] and a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29 [90]. For the following reasons, the Court denies both motions.

**BACKGROUND**

On June 10, 2024, a jury convicted Mr. Isbaih of four counts of wire fraud in violation of 18 U.S.C. § 1343. The evidence presented at trial showed that Mr. Isbaih devised a scheme to fraudulently obtain money from PPP lenders through the submission of loan applications containing false information. Some of these loan applications falsely represented that the customers owned their own business or were self-employed, enabling them to receive PPP loans for which they were not eligible. In other cases, the customers were legitimately entitled to PPP loans, but Mr. Isbaih falsely inflated the number of employees and/or business income or monthly payroll associated with the customer's

business, causing the lenders to issue larger loans that would otherwise have been the case. For his services, Mr. Isbaih charged his customer $1250 each, in two installments.

The customers all testified that they had provided only truthful information to Mr. Isbaih, and that he nevertheless inserted fabricated details into their loan applications. At trial, the defense impeached the witnesses by pointing out some inconsistencies in their testimony. However, no evidence was presented contradicting any witness's claim to have provided only truthful information to Mr. Isbaih.

The prosecution also produced as a witness Fares Yasin, who worked undercover with the FBI during its investigation of Mr. Isbaih. Fares Yasin is the brother of Mohamad Yasin, "a competitor of Mr. Isbaih's" who encouraged Fares to work with the FBI in its investigation. Dkt. 89, *2 [hereinafter "New Trial Mot."]. At trial, Fares Yasin testified that he secretly recorded Mr. Isbaih, as part of the FBI investigation, while meeting with him for the putative purpose of securing a PPP loan. After initially evaluating Fares Yasin's financial documentation, Mr. Isbaih told him that he qualified for a loan of about $2,217 if "you're doing this legally." Dkt. 95, *8 [hereinafter "Gov. Resp."]. Fares Yasin then inquired about using gross (rather than net) income for the income reported on the loan application. Mr. Isbaih had already told Fares Yasin that gross income could not be used for this part of the application, but upon hearing the question, Mr. Isbaih said that they could use the larger gross income figure, but that they would have to "amend" the most recent tax return. *Id.* He then directed an employee to eliminate all listed business expenses from Fares Yasin's loan application.

After his conviction, Mr. Isbaih filed the two motions currently under consideration. The Government timely filed a combined response to both motions. Mr. Isbaih did not file any reply, so the Court considered the matter fully briefed and took it under advisement.

– 2 –

**LEGAL STANDARD**

Federal Rule of Criminal Procedure Rule 33 authorizes district courts to "vacate any judgment and grant a new trial if the interest of justice so requires." Granting a new trial is "reserved for only the most extreme cases," and courts "approach such motions with great caution." *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021) (citations omitted). "The applicable standard under Rule 33 requires a new trial 'only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict.'" *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019) (quoting *United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016)). "The ultimate inquiry is whether the defendant was deprived of a fair trial." *United States v. Friedman*, 971 F.3d 700, 713 (7th Cir. 2020) (citation omitted). District courts have considerable discretion in determining Rule 33 motions. *Id.* at 716.

Federal Rule of Criminal Procedure 29 requires a court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A defendant seeking a post-trial judgment of acquittal under Rule 29 faces an extremely high bruden. *United States v. Vizcarra-Millan*, 15 F.4th 473, 506 (7th Cir. 2021). When assessing Rule 29 motions, "courts view the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *United States v. Wallace*, 991 F.3d 810, 812 (7th Cir. 2021). In doing so, courts do not re-weigh the evidence or second-guess credibility determinations and make all reasonable inferences in the government's favor. *United States v. Ginsberg*, 971 F.3d 689, 695 (7th Cir. 2020).

**DISCUSSION**

**I.   Motion for New Trial**

Mr. Isbaih argues that his trial was deficient because (1) the Government allegedly violated the Confrontation Clause of the Sixth Amendment by failing to produce Mohamad Yasin as a witness; and because (2) the Court refused to issue a requested jury instruction concerning whether Mr. Isbaih

relied in good faith on information provided to him by his customers. Neither argument provides grounds for a new trial.

      A.    *Confrontation Clause*

The Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him" at trial. This guarantee has long been understood to include "the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). As a consequence, the Government is forbidden from offering as trial evidence "testimonial" statements made by absent declarants when the defense has not had any prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Although the Supreme Court has never set forth an exhaustive definition of a "testimonial" statement, the category "applies… to [statements made during] police interrogations." *Id.* However, "The Clause… does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9; *see Smith v. Arizona*, 602 U.S. 779, 785 (2024) ("'[T]he Clause bars only the introduction of hearsay—meaning, out-of-court statements offered 'to prove the truth of the matter asserted.' When a statement is admitted for a reason unrelated to its truth… the Clause's 'role in protecting the right of cross-examination' is not implicated." (quoting *Anderson v. United States*, 417 U.S. 211, 219 (1974); *Tennessee v. Street*, 471 U.S. 409, 414 (1985))); *see also United States v. Nettles*, 476 F.3d 508, 517 (7th Cir. 2007) (the Confrontation Clause does not apply to out-of-court statements offered "merely… to show context").

Mr. Isbaih contends that the Government's failure to produce Mohamad Yasin as a witness violated the Confrontation Clause. He argues that Mohamad Yasin's statements to the FBI were elicited in response to police interrogation and are therefore testimonial in character. New Trial Mot. *3. Strictly speaking, Mr. Isbaih is correct: any statements made by Mohamad Yasin to the FBI in the context of establishing the facts of Mr. Isbaih's crimes would almost certainly be testimonial. *Id.*; *see Davis v. Washington*, 547 U.S. 813, 826 (2006). But that alone is not enough to implicate the

Confrontation Clause. The fatal flaw in Mr. Isbaih's argument is that the Government did not introduce any statement by Mohamad Yasin as evidence. On direct examination, Fares Yasin only stated that he spoke with the FBI at his brother's request. To be sure, Fares Yasin talked extensively about Mohamad while on the stand—but only in response to cross-examination questions from defense counsel. The Government cannot be held responsible for Mr. Isbaih's own elicitation of statements concerning Mohamad Yasin. Fares and Mohamad Yasin's potential motivations for working with the FBI were proper subjects for impeachment while Fares Yasin on the stand, and defense counsel diligently impeached him. But impeachment evidence is offered to attack a witness's credibility, not to prove the truth of any matter asserted. *See Jackson v. Stovall*, 467 F. App'x 440, 444 (6th Cir. 2012). And, in any case, this evidence certainly was not offered *by the Government* to prove the truth of the matter asserted.

Because the Government did not introduce any testimonial statement by Mohamad Yasin into evidence, its decision not to produce him as a witness did not violate the Confrontation Clause.

  B. *Good Faith Jury Instruction*

Mr. Isbaih also claims he should have a new trial because he was prejudiced by the Court's refusal to give the jury his requested instruction concerning what would have constituted good-faith reliance by Mr. Isbaih on the statements of his customers. As the Seventh Circuit has observed, "To be entitled to a particular theory of defense instruction, the defendant must show the following: 1) the instruction is a correct statement of the law, 2) the evidence in the case supports the theory of defense, 3) that theory is not already part of the charge, and 4) a failure to provide the instruction would deny a fair trial." *United States v. Mutuc*, 349 F.3d 930, 935 (7th Cir. 2003) (citing *United States v. Chavin*, 316 F.3d 666, 670 (7th Cir.2002)). Mr. Isbaih's objection to the Court's refusal to instruct the jury concerning good faith does not meet any of these elements, much less all four.

Mr. Isbaih requested that the jury be instructed that, if he had relied on good faith on the information that he received from his clients in preparing the fraudulent applications, then he would have lacked the requisite intent to commit wire fraud. In support, Mr. Isbaih cited Treasury regulations governing tax preparation, which permit a good faith defense. The Court denied the request because those regulations concern civil liability for tax preparation, rather than criminal liability for wire fraud. Mr. Isbaih argues that, if good faith reliance is sufficient to defeat civil liability, then *a fortiori* it should also be sufficient to defeat criminal liability. But this argument is misplaced. Civil liability for tax preparation is not simply a lesser version of criminal liability for wire fraud, such that the greater should be regarded to include the lesser. This is instead a case of apples and oranges, with entirely different kinds of liability for different kinds of offenses. Mr. Isbaih does not identify any authority indicating otherwise. And even if the two were similar enough to generally permit an *a fortiori* argument, it does not automatically follow that a defense for a lesser charge should be permitted as a defense for a greater charge. *Cf. Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*, No. 15 CV 9323, 2021 WL 1209296, at *9 (N.D. Ill. Mar. 31, 2021) (Cummings, J.) ("civil immunity does not invariably lead to criminal immunity" (citing *Golden v. Helen Sigman & Assocs.*, Ltd., 611 F.3d 356, 364 (7th Cir. 2010))). Wire fraud is a serious offense, and if Congress wished to establish a good faith defense in 18 U.S.C. § 1343, it could have done so. It is not this Court's place to second guess Congress's decision to do otherwise.

Additionally, even if the Court was mistaken in refusing Mr. Isbaih's instruction on good faith, the error was harmless. *Cf. Maclin*, 915 F.3d at 444. Mr. Isbaih's customers all testified that they provided only accurate information to him, and Mr. Isbaih did not introduce any evidence casting doubt on that factual aspect of their testimony.[1] Yet in every case, the loan applications that Mr. Isbaih created included significant fabrications. Thus, even if the jury had considered a good faith defense,

---

[1] Mr. Isbaih did impeach witnesses based on potential contradictions in their testimony, but that impeachment called into question each witness's respective credibility, rather than directly contradicting the truth of the matter asserted.

there would not have been any evidence that a reasonable jury could rely on to conclude that Mr. Isbaih acted in good faith. *United States v. Brimberry*, 961 F.2d 1286, 1290 (7th Cir. 1992) (defendant not entitled to good faith jury instruction where no evidence supported the defense). Moreover, the Court's instructions concerning the required intent to defraud inherently required the jury to reject a conclusion that Mr. Isbaih acted in good faith. *See Mutuc*, 349 F.3d at 936 ("it is impossible to intend to deceive while simultaneously acting in good faith"); *Brimberry*, 961 F.2d at 1291 ("the district court's instructions on willfulness necessarily encompassed [defendant]'s theory of good faith reliance on accountant's advice").

In sum, Mr. Isbaih was not entitled to his requested jury instruction concerning good faith. The instruction would not have been a correct statement of the law because 18 U.S.C. § 1343 does not include a good faith affirmative defense; no evidence in the case supported the theory of defense; the theory was implicitly already part of the charge due to the requirement of finding the defendant acted with intent to defraud; and the decision not to provide the instruction did not deny Mr. Isbaih a fair trial. *Mutuc*, 349 F.3rd at 935. The Court was correct to deny Mr. Isbaih's proposed instruction, and that decision did not prejudice Mr. Isbaih.

The Court finds that the Government did not violate the Confrontation Clause and that Mr. Isbaih was not prejudiced by the Court's decision to refuse his requested jury instruction concerning good faith. The Court therefore denies Mr. Isbaih's motion for a new trial [89].

## II. Motion for Acquittal

Mr. Isbaih has also moved for acquittal under Federal Rule of Criminal Procedure 29, which requires a court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Mr. Isbaih's burden in making such a motion is enormous. *Vizcarra-Millan*, 15 F.4th at 506. Only if no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" may a court grant a Rule 29 motion. *United States v. Jones*, 713 F.3d 336,

340 (7th Cir. 2013). In making that determination a court must "view the evidence in the light most favorable to the government[.]" *Wallace*, 991 F.3d at 812. Mr. Isbaih has not met this high burden.

Mr. Isbaih claims that there was insufficient evidence to establish beyond a reasonable doubt that he engaged in a scheme to defraud. Dkt. 90, *3 [hereinafter "Acquittal Mot."]. He argues that because the customers signed and submitted the loan applications, it was they who defrauded the lenders, not Mr. Isbaih. But 18 U.S.C. § 1343 does not require that Mr. Isbaih submitted the applications himself; it only requires that he "devised or intend[ed] to devise [a] scheme or artifice to defraud." Here, the evidence showed that Mr. Isbaih's customers provided him with accurate information, and that he nevertheless produced loan applications with fabricated details and charged his customers a significant amount of money for these fabricated documents. That is sufficient evidence for a reasonable juror to conclude that Ms. Isbaih devised and participated in a scheme to defraud PPP lenders.

Mr. Isbaih also claims that the evidence did not sufficiently show that he created false tax documents, and he challenges the testimony of Fares Yasin and the six customers as being insufficient because, he claims, the testimony of each witness was flawed or contradicted such that no reasonable juror could believe it. With respect to Fares Yasin, Mr. Isbaih contends that it is not illegal to amend a tax return or to use gross income for a PPP application, "so long as Yasin did not claim any expenses on his amended Schedule C." Acquittal Mot. *5. But as both Fares Yasin and Mr. Isbaih's administrative assistant testified, Ms. Isbaih did not ask any questions about the basis for the amendment, or about the likelihood of Fares Yasin mistakenly having recorded significant business expenses. And Mr. Isbaih began amending immediately after he told Fares Yasin the amount of a PPP loan Mr. Yasin would be entitled to if "you're doing this legally." It was well within the purview of a reasonable juror to conclude, based on this evidence, that Mr. Isbaih's "amendment" of Fares Yasin's Schedule C tax document reflected the intentional creation of a fraudulent document.

Additionally, Mr. Isbaih misstates the basis of his conviction, which was not only for creating false tax documents but also for creating fraudulent loan applications. In support of his argument against the credibility of the Government's customer witnesses, Mr. Isbaih details several holes or contradictions that the defense exposed in the testimony of the witnesses. He claims that these flaws rendered their testimony "patently incredible." Acquittal Mot. *6. But Mr. Isbaih is making mountains out of molehills. The defense's exposure of minor inconsistencies in the witnesses' testimony does not provide grounds for this Court to overturn the jury's findings. *United States v. Reed*, 875 F.2d 107, 114 (7th Cir. 1989) ("a conflict in testimony where the jury was called upon to assess the credibility of the respective witnesses" is not sufficient to disregard jury's credibility determination). Jurors, as the finders of fact, are responsible for making their own credibility determinations; it is not the Court's place to supplant those determinations absent overwhelming certainty that no rational juror could have believed the witness in question. *United States v. Smallwood*, 188 F.3d 905, 914 (7th Cir. 1999). At trial, defense counsel cross-examined the witnesses and introduced impeachment evidence calling their credibility into question. The jurors weighed this evidence and evidently concluded that the witnesses were nevertheless credible. There is no reason to think that all twelve jurors reached their credibility conclusions irrationally. Their conclusions were not an affront to justice, they were in fact the proper workings of justice in a system of adversarial advocacy with neutral fact-finders.

The Court finds that there was ample evidence for a rational juror to conclude beyond reasonable doubt that Mr. Isbaih knowingly devised and participated in a scheme to defraud PPP lenders through use of materially false representations and interstate wire communications. There is no basis for the Court to enter a judgment of acquittal overturning the jury's verdict. The Court denies Mr. Isbaih's motion for acquittal.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Isbaih's motion for a new trial [89] and motion for acquittal [90].

**IT IS SO ORDERED.**

Date: 1/29/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge